IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| COLIN TUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 1:20-cv-00570 |
| | ) |
| GULF COAST SHELTER, INC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND JURY DEMAND

Plaintiff bring this action against Gulf Coast Shelter, Inc., (hereinafter "Defendant") a corporation organized and existing in Daphne, Alabama, for declaratory and equitable and injunctive relief, compensatory damages, back pay, and punitive damages from Defendant arising from Defendant's violation of rights guaranteed to Plaintiff under Title I of the Americans with Disability Act, 42 U.S.C. Section 12101, et seq. Plaintiff also brings this action against Defendant for pendant state law claims for breach of contract.

### JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331, 1343(4), 2201, 2202.

2. Jurisdiction to grant injunctive and declaratory equitable relief as well as damages is invoked pursuant to 42 U.S.C. Section 12101, et seq.

1

## VENUE

3. Venue is proper in the Southern District of Alabama, Southern Division, since Defendant conducted business within this District and Division and this is where acts of discrimination occurred.

## PARTIES

4. Plaintiff Colin Tucker (hereinafter "Tucker") is over the age of nineteen years and a resident citizen of Fairhope, Baldwin County, Alabama. At all times relevant to this action Tucker was employed by Gulf Coast Shelter, Inc.

5. Defendant Gulf Coast Shelter, Inc., (hereinafter "Defendant") is an employer in accordance with 42 U.S.C. § 12111(5) and 42 U.S.C. § 12131(1) and is a corporation operating and conducting business in Daphne, Baldwin County, Alabama. Defendant is engaged in an industry affecting commerce and employs more than 15 employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Prior to filing this civil action, Plaintiff timely filed written charges asserting discrimination and retaliation with the Equal Employment Opportunity Commission.

7. On or about September 9, 2020, the EEOC issued Plaintiff a Notice of Right to Sue which is attached hereto as Exhibit "A."

8. Plaintiff has exhausted and satisfied all administrative remedies and pre-requisites to filing this action.

## FACTUAL ALLEGATIONS

9. Tucker was hired by Gulf Coast Shelter, Inc. (hereinafter "Gulf Coast Shelter"), October 31, 2011 as a Sales/Trader and continued in said classification and position until his

termination on August 25, 2018.

10. Plaintiff was hired and primarily assigned to perform sales calls and account management for his assigned clientele which was located throughout the United States. This position required communications with clients primarily performed by phone and/or internet communications.

11. From October, 2016 through January, 2018, Plaintiff performed his assigned duties as a Sales/Trader remotely and worked primarily out of his home office. There was no indication from Defendant that his remote work and/or schedule was disruptive to the workforce and/or that it created an undue hardship for Defendant. Plaintiff's sales numbers and sales goals were consistently attained and/or exceeded while working remotely.

12. At all times relevant to this charge Plaintiff satisfactorily performed his assigned duties.

13. Plaintiff is a qualified individual with a disability under the Americans with Disability Act (ADA) in that he can perform the essential functions of his assigned position of Sales/Trader either with or without accommodation.

14. On April 25, 2018, Tucker requested sick leave and left work. Later that evening, Dustin Cook (hereinafter "Cook"), Plaintiff's direct supervisor, was informed that Plaintiff had suffered a severe heart attack and was hospitalized.

15. On or about April 25, 2018, Plaintiff advised Cook he may be required to take a short leave of absence and/or work a modified work schedule as a result of his medical condition.

16. Plaintiff was granted a one (1) week leave of absence by Defendant, but Plaintiff continued to work remotely during the granted leave. Plaintiff was able to perform the essential

functions of his job while working remotely and successfully managed his accounts and sales.

17. Cook was informed and aware Plaintiff was performing work duties while on medical leave and continued to monitor his work performance during his leave and absence.

18. Defendant failed and/or refused to discuss with Plaintiff his right to take medical leave under Defendant's company policies and procedures setting forth detailed procedures for taking medical leave under the Family Medical Leave Act (FMLA).

19. Upon information and belief, John Austin (hereinafter "Austin"), President of Gulf Coast Shelter, stated concerns about granting Plaintiff extended leave and/or FMLA because it was not in the "best interest" of Defendant, Gulf Coast Shelter.

20. On May 8, 2018, Tammy Hooper (hereinafter "Hooper"), Human Resource Officer, contacted Plaintiff to inquire about his return to the office. Plaintiff advised Hooper that he had not been released to return to work, but that he would inquire with his physician.

21. In Early May, 2018, Plaintiff advised Hooper and Cook that he would be released by his physician to return to the office on May 14, 2018, with a modified work schedule of up to four hours a day, but that his physician strongly recommended working from home.

22. In May, 2018, Plaintiff was directed to return to the office setting four hours a day per his doctor's release.

23. Prior to his return to the office, Plaintiff advised Hooper and Cook that he was able to work remotely and requested accommodations to allow him to work full time at home.

24. Defendant failed and/or refused to interface with Plaintiff regarding his request to work totally remotely and/or any other accommodation that may assist him in performing the essential functions of his position.

4

25. Defendant denied Plaintiff's request to work a full time remote position and required Plaintiff to report to the office for the maximum number of hours allowed by his physician. Defendant provided no explanations for its decision.

26. As a result of Plaintiff's denial of his accommodation request to work remotely, Plaintiff began to report to work four (4) hours daily commencing May 14, 2018.

27. After Plaintiff began working in the office, he requested accommodations to allow him to work flexible hours as a result of scheduled medical and cardiac rehabilitation appointments. Plaintiff was allowed to attend appointments, but Defendant required Plaintiff to establish a set schedule of 10:00 a.m. to 2:00 p.m.

28. Plaintiff had difficulty meeting the 10:00 a.m. to 2:00 p.m. schedule set by Defendant as a result of medical appointments scheduled by his physician. As a result, Plaintiff, again, requested accommodations to work remotely. Defendant, again, denied Plaintiff's request. As a result, Plaintiff, again, requested accommodations to work flexible hours due to his inability to meet the set schedule because of scheduled medical appointments.

29. Defendant reluctantly agreed to allow Plaintiff to work flexible hours, but only if there was an established medical appointment. Plaintiff was encouraged to schedule appointments outside of his set schedule and his attendance was strictly monitored by Cook.

30. Employees who were not disabled were allowed absolute freedom to work flexible hours and/or to take leave including, but not limited to, Cook.

31. On May 14, 2018, Plaintiff was released to return to work and returned to work at the office. Plaintiff's physician restricted him to four hours a day in the office, but Plaintiff was authorized to work from home outside of those hours. Plaintiff was also required to attend

numerous doctor's visits and cardiac rehabilitation appointments.

32. Plaintiff provided Defendant and Cook notice of all appointments scheduled by his physician and notice of when he was scheduled to be out of the office as a result of his medical condition.

33. Hooper was also notified of Plaintiff's medical condition and given notice of Plaintiff's medical status as well as all physician and cardiac rehabilitation appointments including, but not limited to, appointments scheduled on August 23, 27 and 28, 2018.

34. Plaintiff continued to perform services and work for Defendant remotely from home from April 26, 2018, until his termination that occurred outside of his scheduled office hours.

35. Cook directed and encouraged Plaintiff to physically come to the office more work hours than allowed by his medical restrictions. Plaintiff refused to work more hours in the office than was advised and/or permitted under his restrictions.  However, Plaintiff continued to work remotely and was able to perform all duties and job requirements required of him.

36. After his heart attack, Plaintiff continued to satisfactorily perform his duties either with or without accommodations.

37. In July, 2018, Plaintiff received an incentive bonus for reaching targeted sales goals established by Defendant.

38. Josh Leavins (hereinafter "Leavins"), a Sales Trader in Plaintiff's office, failed to attain established sales goals set by Defendant for the 2017-2018 sales period. As a result, Leavins received no incentive bonus.

39. After Plaintiff's release from the hospital in April, 2018, he was required to wear

a temporary external defibrillator by his treating physician. Plaintiff wore the external defibrillator at all times including while he was at work.

40. On or about June 13, 2018, Plaintiff experienced medical complications at work which caused his temporary external defibrillator to sound an alarm for several seconds. Plaintiff's Supervisor, Cook, and several of his co-workers, expressed extreme concern and distress for Plaintiff's medical condition as a result of the defibrillator alarm activating. Cook directed Plaintiff to leave work and to seek medical attention despite Plaintiff's assurances that his condition was stable.

41. When Plaintiff returned to work on or about June 14, 2018, Cook expressed concerns about Plaintiff's medical condition and commented that it would be "tragic" if he "dropped dead" at the office. Plaintiff reassured Cook that he was able to perform his job duties and noted his successful performance since his return.

42. On June 15, 2018, Plaintiff's defibrillator again activated and sounded an alarm. Cook, again, expressed concerns regarding Plaintiff's medical status and condition and directed Plaintiff to leave work despite continued assurances that his medical condition was stable.

43. Plaintiff's medical condition in no way affected Plaintiff's ability to perform the essential functions of his job either with or without accommodations.

44. On or about July 15, 2018, Hooper and Cook were informed of Plaintiff's scheduled surgery and need for medical leave on August 28, 2018, to implant the internal defibrillator and heart monitor. Plaintiff advised Cook that he would not be able to drive for a period of one month after the surgery, but assured Cook he would still be able to report to work. Plaintiff, again, requested to work remotely during the one month time frame which was denied.

45.     On or about July 15, 2018, Cook began to scrutinize Plaintiff's work, attendance, and performance. Other similarly situated employees including, but not limited to, Leavins and George Parnell (hereinafter "Parnell"), were not monitored and/or scrutinized in the same manner as Plaintiff.

46.     On August 21, 2018, Plaintiff reminded Cook regarding his upcoming surgery on August 28, 2018. Shortly after his discussion with Cook, Plaintiff was summoned to a meeting with his supervisor, Cook, and the Human Resource Officer, Hooper, to discuss his medical condition and noted absences from work. Plaintiff advised Hooper that he was working remotely and that all required work had been performed.

47.     During the August 21, 2018, meeting, Hooper inquired of Plaintiff "what [is] going on" with his medical condition and inquired about the specifics of his medical status and condition including his diagnosis, prognosis, medications, and treatment. Plaintiff explained to Cook and Hooper details of his medical condition and status including details regarding his diagnosis and prognosis including, but not limited to, his need for a heart transplant and the fact that he was expected to be placed on the transplant list.

48.     Defendant knew and/or should have known that Plaintiff's need for a heart transplant would have required him to take extended leave from work to recover from the procedure.

49.     On August 21, 2018, Plaintiff reminded Cook and Hooper of his request to take medical leave for scheduled medical appointments on August 23, 27, 2018, as well as his scheduled surgery on August 28, 2018.

50.     Hooper and Cook again acknowledged and approved Plaintiff's requested leave of

absence on August 23, 27 and 28, 2018, but directed Plaintiff to provide Defendant with a doctor's excuse for any expected absences and to "keep communication open" regarding his medical condition and status. Plaintiff advised Hooper and Cook that it may take him several days to obtain a physician's excuse for the absences, but assured them he would obtain the requested medical documentation from his physician at the pre-op appointment if not already received.

51. On August 21, 2018, Cook set up a group text with Plaintiff and Hooper to insure "open lines of communications" with Tucker. Hooper and Cook directed Plaintiff to communicate with them regarding Plaintiff's expected hospitalization, medical condition, medical status, and any leave from work.

52. Defendant failed and/or refused to notify Plaintiff of any rights or options to take an extended medical leave or other rights established under Defendant's policies and procedures.

53. On August 23, 2018, Plaintiff notified Cook and Hooper he was at his scheduled Doctor's appointment and confirmed his proposed surgery scheduled on August 28, 2018.

54. On August 23, 2018, Hooper demanded that Plaintiff provide to her all physician paperwork and excuses within three hours. Plaintiff expressed the unreasonableness of the Hooper's request and expressed concerns regarding his ability to provide the medical documentation within the time frame requested.

55. Defendant's demands to produce medical documentation within a three (3) hour time-frame was unnecessary and unreasonable and placed upon Plaintiff stress and anxiety regarding his job.

56. Upon information and belief, Plaintiff's physician faxed to Defendant all

requested paperwork within the three (3) hour time-frame demanded by Hooper.

57. August 24, 2018, Plaintiff notified Cook and Hooper via group text that he was feeling ill and would be working from home.

58. August 24, 2018, Plaintiff was terminated by Defendant.

59. In denying Plaintiff employment and/or reasonable accommodations related thereto, Defendant intentionally, willfully, and maliciously discriminated against Plaintiff on the basis of his disability, his record of disability, and/or his perceived disability in complete disregard of his federally protected rights.

60. August 27, 2018, Cook texted Plaintiff at his scheduled doctor's appointment inquiring about his expected return to the office. Plaintiff advised Cook he would contact him when he left his doctor's office.

61. When Plaintiff left his doctor's office, he immediately contacted Cook to advise him he was heading back to work. Cook immediately notified Plaintiff that Defendant was "letting [him] go". Cook provided to Plaintiff no reasons for the termination.

62. On August 28, 2018, Plaintiff contacted Austin, President, to inquire about his termination. Austin advised Plaintiff he supported the recommendation by Cook to terminate his employment, but provided to Plaintiff no reason for the termination.

63. Plaintiff advised Austin he believed his termination by Defendant to be discriminatory.

64. Upon information and belief, Defendant failed and/or refused to investigate Plaintiff's complaints of discrimination.

65. Defendant failed and/or refused to provide any explanations as to its failure to

address Plaintiff's concerns of discrimination due to his disability.

66. Defendant failed and/or refused to attempt to interface with Plaintiff regarding his termination and/or possible accommodations in the workplace that would have allowed him to continue working.

67. On or about September 7, 2018, Plaintiff was informed of Defendant's false reports to the State of Alabama Department of Industrial Relations that his termination occurred on August 24, 2018, due to a "no show no call" in violation of company leave policies.

68. Plaintiff was eligible for medical leave under Defendant's policies and procedures for a period of twelve weeks.

69. Defendant terminated Plaintiff because of Plaintiff's disability and medical condition.

70. Plaintiff's medical condition in no way affected Plaintiff's ability to perform his assigned duties either with or without accommodations.

71. Plaintiff received no communications and/or reprimands or notice from Defendant that addressed concerns regarding Plaintiff's performance after April, 2018.

72. Plaintiff has a medical condition and impairment that substantially limited major life activities. Despite his disability, Plaintiff satisfactorily performed the essential functions of the position of Sales Trader either with or without restrictions.

73. Defendant failed and/or refused to return Plaintiff to his work and/or duties.

74. Defendant failed to make an individual assessment of Plaintiff's abilities and, instead, relied on personal bias and their general understandings and perceptions regarding his condition.

75. Defendant failed and/or refused to accommodate Plaintiff and/or to determine if requested accommodations would pose a hardship.

76. Plaintiff is a qualified individual with a disability under the Americans with Disability Act (ADA) in that he can perform the essential function of the position of Sales Trader either with or without accommodation.

77. Plaintiff has a history and record of disability which was known by Defendant.

78. Defendant perceived and/or regarded Plaintiff as disabled.

79. In denying the Plaintiff employment and/or reasonable accommodations related thereto, Defendant intentionally, willfully, and maliciously discriminated against Plaintiff on the basis of his disability, his record of disability, and/or his perceived disability in complete disregard for his federally protected rights.

80. Plaintiff was discriminated against because of his disability, his record of disability, and/or his perceived disability, and in retaliation for asking for accommodations in violation of the ADA.

81. On or about February 4, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission asserting violations of the ADA. Defendant was provided notice of said filing and charge.

82. Defendant made numerous requests, inquiries, and demands for information and documentation regarding Plaintiff's medical condition and treatment.

83. As a proximate consequence of the actions of Defendant, Plaintiff was caused to suffer damages, including back wages, pain and suffering, and emotional distress.

84. Defendant ratified the unlawful conduct by failing to take appropriate and

corrective action after having received notice thereof.

85. Plaintiff has been caused to suffer loss of employment, underemployment, and loss of standing and reputation in the community.

86. As a result of the Defendant's actions, Plaintiff has been caused to suffer distress, anxiety, frustration, and loss of benefits and income.

### COUNT I - Termination in Violation of the ADA

87. Plaintiff reavers and realleges the paragraphs 1 through 86 above as though fully set forth herein.

88. Plaintiff is a qualified individual with a disability in that he had a physical impairment that substantially limited a major life activity pursuant to 42 U.S.C. Section 12112(a).

89. The Defendant is a covered entity and an employer pursuant to the Act, 42 U.S.C. Section 12111.

90. The Plaintiff was able to perform the essential functions of his job either with or without reasonable accommodation.

91. Defendant made inquiries and perceived judgements regarding Plaintiff's medical condition.

92. Defendant questioned Plaintiff's ability to perform the essential functions of his position as a Sales Trader based upon perceived judgments and biases regarding his medical condition.

93. Plaintiff was terminated because of his medical condition and/or disability in violation of the ADA.

94. Plaintiff's disability and/or medical condition was a substantially motivating factor in Defendant's decision to terminate Plaintiff.

95. In their actions towards Plaintiff as described above, Defendant acted willfully, intentionally and/or with callous or reckless indifference to Plaintiff's rights under the ADA.

96. Defendant knew or should have known of the unlawful conduct of Cook and/or Hooper and failed and or refused to take appropriate action.

97. Defendant ratified the unlawful conduct of Cook and/or Hooper.

98. Defendant's actions were done with malice or reckless indifference to the federally protected rights of Plaintiff.

99. As a result of the Defendant's discriminatory actions, the Plaintiff has suffered extreme harm including, but not limited to, mental anguish, emotional distress, emotional suffering, and lost wages.

100. Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorney's reasonable attorneys' fees for the services rendered in this cause.

## COUNT II - Failure to Interface

101. Plaintiff reavers and realleges the paragraphs 1 through 86 above as though fully set forth herein.

102. Plaintiff requested specific accommodations that would assist him in performing his job duties.

103. The Defendant failed or refused to interact with Plaintiff to determine what accommodation, if any, could be reasonably provided by Defendant.

104. Defendant failed to accommodate Plaintiff's known disability.

105. Plaintiff's termination was due to Defendant's failure to provide reasonable accommodations which would have allowed him to meet established job requirements

106. Defendant's actions were done with malice or reckless indifference to the federally protected rights of the Plaintiff.

107. As a result of the Defendant's acts or inaction, the Plaintiff has suffered loss of employment, underemployment, lost wages, frustration, anxiety, emotional distress, and other compensatory damages.

### COUNT III - Discrimination in Violation of the ADA
### Failure to Accommodate

108. Plaintiff reavers and realleges the paragraphs 1 through 86 above as though fully set forth herein.

109. Plaintiff is a person with a disability, has a history of disability, and/or is regarded as disabled pursuant to 42 U.S.C. § 12102.

110. Defendant is an employer in accordance with 42 U.S.C. § 12111(5).

111. Plaintiff is a qualified individual with a disability as defined under the ADA. Furthermore, Defendant had a record of Plaintiff's disability and restrictions.

112. Defendant refused to interface with Plaintiff and/or make a reasonable accommodation to Plaintiff's known or perceived physical limitations, which is a violation of the ADA. Such an accommodation would not have imposed an undue hardship on the operation of the Defendant's business.

113. Despite Plaintiff's disability, with or without reasonable accommodation, he is able to perform the essential functions of his job and is a "qualified individual with a disability"

pursuant to 42 U.S.C. § 12111 and 42 U.S.C. 12131(2).

114. Plaintiff is a qualified individual with a disability in that he had a physical impairment that substantially limited a major life activity pursuant to 42 U.S.C. Section 12112(a).

115. Defendant is a covered entity and an employer pursuant to the Act, 42 U.S.C. Section 12111.

116. Plaintiff was provided specific restrictions from his treating physicians which minimally required Defendant to make some modifications to Plaintiff's duties and assignment.

117. Defendant made inquiries and perceived judgements regarding Plaintiff's medical condition.

118. Plaintiff requested specific accommodations that would assist him in performing his job duties.

119. Defendant failed or refused to interact with Plaintiff to determine what accommodation, if any, could be reasonably provided by Defendant. Defendant has, further, failed to accommodate Plaintiff's known disability.

120. Defendant's actions were done with malice or reckless indifference to the federally protected rights of Plaintiff.

121. As a result of the Defendant's acts or inaction, Plaintiff's employment was terminated.

122. Plaintiff suffered loss of employment, underemployment, lost wages, frustration, anxiety, emotional distress, and other compensatory damages.

## COUNT IV - ADA Interference Claim

123. Plaintiff reavers and realleges the paragraphs 1 through 86 above as though fully

set forth herein.

124. Plaintiff requested accommodations in the workplace including, but not limited to, remote work and/or flexible hours for a known medical condition.

125. Defendant failed and/or refused to interact with Plaintiff or to provide to him reasonable accommodations in the workplace.

126. Plaintiff was terminated from his position as a direct result of his disability and Defendant's failure to provide reasonable accommodations which would allow him to meet established job requirements.

127. Defendant's actions were done with malice or reckless indifference to the federally protected rights of the Plaintiff.

128. Defendant interfered with Plaintiff's rights under the Americans with Disabilities Act pursuant to Section 503(b) (42 U.S.C. §12203(a)).

129. As a result of the Defendant's acts or inaction, the Plaintiff has suffered loss of employment, underemployment, lost wages, frustration, anxiety, emotional distress, and other compensatory damages.

130. Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce his rights under the law and is required to pay their reasonable attorneys' fees for the services rendered in this cause.

## COUNT V - ADA Unauthorized Medical Inquiry

131. Plaintiff reavers and realleges the paragraphs 1 through 86 above as though fully set forth herein.

132. Plaintiff notified Defendant of a serious medical condition and provided to

Defendant documentation regarding his restrictions.

133. Defendant made unlawful inquiries with Plaintiff regarding the medical condition and disability and/or the nature or severity of Plaintiff's disability.

134. The medical inquiries made by Defendant were not job related or consistent with business necessity.

135. Defendant's actions were done with malice or reckless indifference to the federally protected rights of Plaintiff.

136. Defendant has interfered with Plaintiff's rights under the Americans with Disabilities Act pursuant to Section 42 U.S.C. Section 12112 (d)(4)(A).

137. The actions of Defendant caused Plaintiff distress, humiliation, embarrassment and shame.

138. As a result of the Defendant's acts or inaction, the Plaintiff has suffered loss of employment, underemployment, lost wages, frustration, anxiety, emotional distress, and other compensatory damages.

139. Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce his rights under the law and is required to pay their reasonable attorneys' fees for the services rendered in this cause.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

A. Grant Plaintiff a declaratory judgment that the actions, policies and practices complained of herein of the Defendant violates Plaintiff's federally protected rights as set forth

herein.

B.  Grant Plaintiff a preliminary injunction enjoining the Defendant, their agents, successors, employees and attorneys and those acting in concert with them and at their direction, from maintaining or continuing the policies, practices, customs and usages of denying, abridging, withholding, conditioning, limiting, or otherwise interfering with the Plaintiff's rights as set forth herein.

C.  Grant Plaintiff an order enjoining the Defendant, their agents, successors, employees, and attorneys and those acting in concert with them and at their discretion, from engaging in practices that discriminate against Plaintiff and enjoining Defendant from failing and refusing to immediately restore Plaintiff's employment status and classification.

D.  Grant Plaintiff an award of back pay from Defendant in the amount Plaintiff would have earned but for those policies and practices complained herein.

E.  Grant Plaintiff front pay or wages in the amount equal to the pay or wages he would be earning after final judgment, but for Defendant's unlawful policies and practices complained of herein, and but for the delays Plaintiff will encounter in reaching his rightful place because of business necessity and other equitable considerations.

F.  Award compensatory damages against Defendant in an amount the jury determines will compensate the Plaintiff for his losses and damages and/or nominal damages as may be appropriate.

G.  Award Plaintiff costs and expenses in prosecuting this action including an award of reasonable attorneys' fees.

H.  Award punitive damages against the Defendant in an amount the jury determines

will discourage and prevent such conduct in the future.

   I.  Retain jurisdiction of this action following judgment for sufficient time to insure that Defendant complies with the law and decree which may be entered herein, and during such time to require Defendant to report such information as is necessary to evaluate their compliance.

   J.  Grant Plaintiff such other and further relief as equity and justice requires.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted this 25th day of November, 2020.

        */s/ Mary E. Pilcher*
        Mary E. Pilcher, Esq.(asb-2436-h58m)
        Stein & Pilcher, LLC
        151 North Bancroft Street
        P.O. Box 602
        Fairhope, AL 36533
        (251) 210-4557